```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

DR. MARIA I. REYES,

        Plaintiff,

        v.

NORTH PARK UNIVERSITY; DR. DAVID PARKYN, President; DR. JOSEPH JONES, Provost; and DR. REBECCA NELSON, Dean,

        Defendants.

Case No. 11 C 8585

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss the Plaintiff's Second Amended Complaint (the "SAC"). For the reasons stated herein, the Motion is granted in part and denied in part.

### I. BACKGROUND

Dr. Maria I. Reyes (hereinafter, "Reyes" or "Plaintiff") is a tenured associate professor in the School of Education at North Park University ("the University"). She was hired in 1999. In 2007, Ryes filed an EEOC complaint against the University, alleging racial discrimination; Reyes and the University settled the dispute by agreement. As part of the settlement, the University agreed that its president would recommend Reyes for tenure. Reyes subsequently received such tenure. The University also agreed that a 2006 Faculty Personnel Committee ("FPC") Report on Reyes would be sequestered in the office of President and that the University

"will not use the [2006] FPC Report with regard to future employment decisions regarding Reyes." SAC, Ex. C., at 2.

However, when Plaintiff applied in 2009 for a promotion to full professor, the FPC Report of July 2009 denied her promotion and cited liberally from the 2006 FPC Report. Additionally, Plaintiff recounts a litany of incidents she believes reflect the racial animosity and adverse employment actions taken toward her by her immediate boss, Defendant Dean Rebecca Nelson ("Nelson"); the University provost, Dr. Joseph Jones ("Jones"); and the university president, Dr. David Parkyn ("Parkyn"). These incidents will be further discussed below where relevant.

Counts I, II and III allege violations of 42 U.S.C. § 2000(e) *et seq*. (Title VII) against the University only. Count I alleges racial discrimination, Count II alleges retaliation, and Count III alleges discrimination based on national origin. Counts IV-VI allege violations of 42 U.S.C. § 1981 against all four Defendants. Count IV alleges racial discrimination, Count V alleges discrimination based on national origin, and Count VI alleges retaliation. Lastly, Count VII alleges breach of contract against all four Defendants.

## II.  LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in Plaintiffs' Complaint and draws all inferences in their favor. *Cole v. Milwaukee Area Tech. Coll.*

*Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). Plaintiffs need not allege "detailed factual allegations," but must offer more than conclusions or "a formulaic recitation of the elements of the cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Naked assertion[s] devoid of further factual enhancement" will not suffice – a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

### III. ANALYSIS

#### A. Title VII (Counts I-III)

In Counts I and III, Plaintiff alleges race and national origin discrimination, respectively, under Title VII. The University protests that these charges must be dismissed because Plaintiff did not file EEOC complaints within 300 days after the discrimination occurred.

Plaintiff was denied a promotion by the Faculty Personnel Committee ("FPC") on March 31, 2009. She quickly appealed this decision to the FPC, which subsequently affirmed its decision. Reyes appealed the decision to Provost Jones. In a letter dated May 11, 2009, Jones concluded the judgment of the FPC was appropriate. Plaintiff then took her case to the President Parkyn. As Parkyn pointed out in a letter to Reyes, the University's Manual of Academic Personnel Policies ("MAPP") only allows for appeal to

the president when the FPC *recommends* promotion but the "University's chief academic officer" (in this case, Provost Jones) denies the application in spite of the FPC recommendation. SAC, Ex. B, at 1. Nonetheless, Parkyn agreed to review the situation. In a letter to Plaintiff dated July 28, 2009, he indicated he agreed with the FPC and Provost Jones.

The University contends that Reyes was put on notice of the allegedly discriminatory action when the FPC denied promotion on March 31, 2009 – 413 days before the EEOC complaint of May 18, 2010 and well outside the 300 day period required. Even if the date of the provost's decision (May 11, 2009) is considered, that date, too, is 372 days prior to the EEOC complaint. Reyes says the decision did not become final until Dr. Parkyn's letter was issued on July 28, 2009, which is within 300 days of the EEOC complaint.

As a preliminary matter, the Court must decide which documents that have been presented to it can be considered at the motion to dismiss stage. Dr. Parkyn's letter is certainly fair game, since Plaintiff attached it to her Complaint. *See* Fed. R. Civ. P. 10(c) (noting "an exhibit to a pleading is a part of the pleading for all purposes"). In her response, Plaintiff attached a copy of the MAPP, and quotes it extensively in her response to argue that her EEOC filing was timely. Since the MAPP governs when promotion decisions are final and is central to Plaintiff's claims, the Court may consider it. *See Grabianski v. Bally Total Fitness Holding*

*Corp.*, No. 12 C 284, 2012 U.S. Dist. LEXIS 129757, at *18-19 n.2 (N.D. Ill. Sept. 11, 2012) (considering a contract attached to plaintiff's response to a motion to dismiss because the contract was central to the plaintiff's complaint). Additionally, Plaintiff cites to the MAPP and the appeal process in her Complaint. Pl.'s Compl. 10. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (noting that in deciding a Rule 12 motion to dismiss, the Court may refer to "documents that are critical to the complaint and referred to in it." The case also notes that the party opposing the motion to dismiss has much greater latitude in attaching documents to her response.)

According to the Seventh Circuit, in Title VII actions, "Time [to file an EEOC complaint] starts to run with 'the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Lever v. Northwestern University, et al.*, 979 F.2d 552, 553 (1992) (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (emphasis in both *Chardon* and *Lever*). In *Lever*, a university committee recommended against tenure for plaintiff, and the committee recommendation was followed by a dean's letter to plaintiff informing her he would not recommend tenure to the provost. The *Lever* plaintiff argued the decision was not final until the provost denied tenure, because the dean was merely making a recommendation, not a decision. The Seventh Circuit disagreed, finding that the dean had made a decision. The court added that

the dean's letter smacked of finality in part because it offered the plaintiff a final year of work before termination.

Here, the Court agrees that, at the very latest, Reyes was on notice once the provost informed her of his decision. The heading of MAPP Section 6.5 is titled "Appeals Related to Denial of Promotion." Pl.'s Resp., Ex. E.1, at 19, ECF No. 44-1, PageID 303. The MAPP calls a request of the FPC to reverse itself a "request for reconsideration" that must be made within 10 days of the FPC's original "action." *Id.* The fact that, under the University's own rules, the FPC's original action starts a clock for reconsideration indicates that the FPC's original action is the act of discrimination. Additionally, Plaintiff's own pleading calls the steps after the FPC's original decision "appeals." Pl.'s Compl. 10.

Even if the Court were to give Plaintiff the benefit of the doubt that the FPC's original decision did not start the clock, the MAPP clearly states that the FPC's second action (the reconsideration) is a "decision," meaning the FPC's second action would be the notifying event. Pl.'s Resp., Ex. E.1 (MAPP), at ¶ 6.5.2. The MAPP also states that receipt of a petition by the provost will not necessarily "entail investigation or detailed consideration." *Id.* at ¶ 6.5.3. This indicates that there is no mandatory appeal after the FPC's reconsideration and further reinforces that the FRC's action is final. Lastly, as Defendant

points out, and as reflected in the exhibit Plaintiff attached to her Complaint, the President is not even part of the appeal process unless the FPC recommends promotion but is overruled by the provost. SAC, Ex. B., at 1. Certainly, all this makes clear that the decision was made, at the very latest, when the provost ruled (and more than likely it was final once the FPC issued its initial decision because that decision was "self-effectuating and stands unless reversed, which can occur only on a request for review." *Lever*, 979 F.2d at 555.). The Court thus grants Defendants' Motion to Dismiss Counts I and III. Defendants make the same time-bar argument with respect to Count II. Defendants Mem., at 7. Accordingly, Count II is dismissed as well.

### B. Section 1981 Claims (IV-VI)

#### 1. *"National Origin" Discrimination under § 1981*

Plaintiff alleges both racial discrimination and discrimination based on national origin (Counts IV and V, respectively) under § 1981. However, Section 1981 prevents only race discrimination. *Perez v. Norwegian-American Hosp., Inc.*, 93 Fed.Appx. 910, 913 n.1 (7th Cir. 2004). Accordingly, Count V is dismissed for failure to state a claim. (The Court notes that "race" is defined broadly in § 1981 actions to include national origin, so to the extent that Count V argues any discrimination was based on national origin, the Court will consider those arguments

as one of racial discrimination under Count IV. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756-757 (7th Cir. 2006).)

### *2. Racial Discrimination by the University*

While a complaint must contain something more than a general recitation of the elements of the claim, the Seventh Circuit has nevertheless reaffirmed the minimal pleading standard for simple claims of race or sex discrimination. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

While a *prima facie* case of racial discrimination must establish the plaintiff is (1) a member of a racial minority; (2) the defendants had the intent to discrimination on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract, at the motion to dismiss stage, a complaint "need not allege facts in support of each element, and it is sufficient if it alleges that the employee was discriminated against because of [her] race." *Huon v. Johnson & Bell, Ltd.*, 2012 U.S. Dist. LEXIS 74176, at *18 (N.D. Ill. May 23, 2012).

Plaintiff's Complaint clearly states "Defendants discriminated against Plaintiff on the basis of her race when they denied her promotion to full professor but promoted [w]hite faculty members with equally low or inferior student satisfaction surveys and with an equal or lower record of scholarship and attainment." Compl. 20. Additionally, Plaintiff has alleged she is Hispanic and of Puerto Rican national origin. Although she doesn't explicitly

state that the subject of the discrimination involved a contract, she lists enough details for any reader to know that the discrimination centers around her tenured employment contract. While some cases require a fourth element that Plaintiff show she was performing her job adequately, Plaintiff has alleged that too, implicitly, by arguing the stated reasons for her non-promotion were untrue.

Additionally, Plaintiff lists facts that, while not necessarily describing an adverse job action, certainly apprise Defendants that they are accused of discrimination based on race. She alleges she and other minority faculty were routinely left off of minutes after attending department meetings. She accuses Dean Nelson of a campaign to rid the education department of minorities. She claims Nelson demurred from writing a recommendation letter for her and another minority faculty member on the grounds that she didn't know them well enough, but adds that Nelson had no problems writing such letters for two specific white faculty members. Reyes notes that she and others complained in writing about perceived racial discrimination. The Court will address shortly if these allegations adequately state a case for adverse employment action aside from the denial of promotion, but certainly in terms of the adverse promotion decision, it communicates that race was the motivating factor, at least as far as Dr. Nelson is concerned. At

least in regards to the denial of promotion, the Motion to Dismiss the § 1981 claim against the University is denied.

### 3. *Racial Discrimination by Individual Defendants*

Plaintiff also sues individual Defendants under § 1981. "[P]ersonal liability cannot be imposed on a corporate official for the corporation's [or, in this case, educational institution's] violation of section 1981 when the official is not alleged to have participated in the actual discrimination against plaintiff." *Segura v. Strive, LLC*, No. 11 C 5334, 2012 U.S. Dist. LEXIS 28669, at *5-6 (N.D. Ill. March 5, 2012) (citing *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985)). Defendants cite *Segura* in arguing that all individual defendants should be dismissed from this case. The Court, which rendered the decision in *Segura*, finds it inapposite to this case. In *Segura*, the individual defendant was alleged only to have informed plaintiff of his firing. It did not allege that he participated in any way in the discriminatory decision-making process, merely that he relayed information. Here, as just noted, Defendant Nelson is accused of writing promotion recommendation letters on racial lines, and Plaintiff also alleges that a faculty member's chances of promotion are heavily linked to whether they receive their dean's endorsement. At the motion to dismiss stage, where we must assume these allegations to be true, this is sufficient to keep Nelson in the case.

However, the Complaint is devoid of any plausible allegations indicating Provost Jones and President Parkyn based their adverse promotion decisions on race. Therefore, they are dismissed from the § 1981 promotion claim.

To the extent that Plaintiff is alleging a § 1981 action on the basis of anything other than the failure to promote, this Court agrees with Defendants that Plaintiff has not alleged conduct severe enough to constitute an adverse employment action. She alleges Nelson belittled her work, refused to mentor her or provide constructive feedback, questioned why a guest reviewer was present in Plaintiff's classroom, implied Plaintiff didn't know how to write a course syllabus, questioned Plaintiff's grading decisions, appeared without warning in Plaintiff's classroom to observe her teaching styles, placed Plaintiff on an improvement plan and would not let Plaintiff teach certain courses. While these activities may be unpleasant for Reyes, none of them constitutes an adverse employment action. *See Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001) (finding unfavorable performance reviews, and oral and written reprimands did qualify as adverse employment actions). Since the Court finds Reyes' listed grievances do not constitute adverse employment actions, Dr. Jones' refusal to take any action when Plaintiff complained of these incidents cannot constitute adverse employment action either. Therefore, Dr. Jones' refusal to take any action when Plaintiff

complained of these incidents cannot constitute adverse employment action either. Thus, any alleged § 1981 discrimination actions besides the denial of promotion are dismissed.

### *4. Retaliation*

Plaintiff also accuses all Defendants of § 1981 retaliation. The Complaint does not say what protected activity inspired the retaliation, but Plaintiff's Response to the Motion to Dismiss identifies her first EEOC complaint as the protected activity. Reyes' first EEOC complaint was filed on April 24, 2007, and that complaint was settled by agreement on October 16, 2007. The denial of promotion did not occur until March 31, 2009. A claim of retaliation must (1) show the Plaintiff engaged in statutorily protected expression, (2) show the Plaintiff suffered an adverse action at the hands of an employer, and (3) establish a causal link between the two. *EEOC v. Concentra Health Servs.*, No. 05 C 1109, 2005 U.S. Dist. LEXIS 26926, at *3 (N.D. Ill. Nov. 3, 2005). However, absent further causation facts linking the two acts, "retaliation . . . requires a discriminatory act to follow fairly closely on the heels of a protected expression." *Rogers v. Metro Water Reclamation Dist.*, No. 01 C 2271, 2001 U.S. Dist. LEXIS 20936, at *3 (N.D. Ill. Dec. 14, 2001) (noting a gap of two and a half years cannot satisfy the causation element). Nothing but the conclusory allegation of retaliation and the far-removed timing support causality in Reyes' complaint. The Court finds that this

does not plausibly state facts amounting to a claim of retaliation. The Count is dismissed.

### C. Breach of Contract

As noted by Defendants, the Court's order of August 23, 2012 already found that the Plaintiff has stated adequately facts alleging breach of contract against the University. Defendants asked this Court to relinquish jurisdiction over the contract claim if it dismissed all the federal statutory claims. As the Court has not dismissed all federal claims, the Court denies the request. However, the Court does dismiss the individual defendants from this Count, as Plaintiff's own Complaint affirms that only the University was a party to the contract.

### D. Federal Rule of Civil Procedure 8

Finally, Defendants argue that the Complaint does not comply with Rule 8's requirement for "a short and plain statement of the claim[s]." FED R. CIV. P. 8(a)(2). The SAC, at 22 pages, is a bit unwieldy, but the Court has seen much worse from *pro se* Plaintiffs, and this *pro se* Plaintiff can hardly be blamed for adding more facts after Defendants complained she had not adequately pled her case.

### E. Local Rule 7.1

However, the Court notes that Plaintiff's response to the motion to dismiss was 26 pages, far beyond the 15 pages allowed by Local Rule 7.1. While courts are to give *pro se* litigants leeway

in liberally construing their complaints, *pro se* litigants still must still follow local rules.  Plaintiff must constrain briefs to 15 pages or receive advance permission from the Court to exceed this limitation.  Failure to do so may result in the Court disregarding anything past page 15.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is granted in part and denied in part.  All claims are dismissed except (1) § 1981 claims of race discrimination against the University and Dr. Nelson in regards to the denial of promotion and (2) the breach of contract claim against the University.

**IT IS SO ORDERED.**

                                             Harry D. Leinenweber, Judge
                                             United States District Court

**DATE:** 12/27/2012